**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Advanced Workstations in Education, Inc., | : | Case No. 14-18952 (MDC) |
| | : | |
| Debtor. | : | |
| | : | |

**MOTION OF DEBTOR ADVANCED WORKSTATIONS IN EDUCATION, INC. FOR ORDER (I) AUTHORIZING AND APPROVING PROCEDURES FOR THE SALE OF THE DEBTOR'S ASSETS; (II) SCHEDULING A SALE; (III) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; AND (IV) APPROVING FORM OF NOTICE OF SALE**

Advanced Workstations in Education, Inc. (the "Debtor" or the "Seller") hereby moves this Court pursuant to Sections 105(a), 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure for the entry of an Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing and approving procedures for the sale of the Debtor's assets; (ii) scheduling a sale; (iii) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the sale; and (iv) approving the form of notice for the sale. In support of this Motion, the Debtor avers as follows:

I.    **BACKGROUND**

1.    On November 10, 2014, the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

2.    On or about November 20, 2014, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in the Chapter 11 Case.

3. Pursuant to 28 U.S.C. §1334, the Court has jurisdiction over this Motion, which is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(M) and (N). Venue of the Chapter 11 Case and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 363 and 365 of the Bankruptcy Code and 2002, 6004 and 6006 of the Bankruptcy Rules.

4. The Debtor is in the business of selling digital learning systems for pre-kindergarten through third grade children to public libraries, childcare facilities and schools (the "Business").

5. The social benefit of the Debtor's products is reflected in the fact that its two largest funders are socially conscious financial organizations. Its primary lender, RSF Social Enterprise, Inc. ("RSF") reports publicly that it is a nonprofit financial services organization, providing loans and provides investments only to nonprofit and for profit organizations dedicated to improving the well-being of society and the environment. Similarly, the Debtor's largest shareholder, Murex Investments ("Murex"), reports publicly that it invests in financial mobility, learning technology and energy efficiency, sectors that it believes to have unique transformational potential and integral broad benefits to society.

6. The Debtor, founded in 1994, now with 45 full time highly dedicated employees operating from its sole location in Chester, Pennsylvania, has captured fully 45% of the public library market in the United States, and has generated annual revenues in recent years of $7-$10 Million.

7. The Debtor has more recently attempted to expand the Business into the much larger childcare and school markets. In contrast to the Debtor's dramatic success in the library market, entry into the childcare and school markets (which has required substantial investment in

product development and manpower) has been delayed. The Debtor has been unable to secure the additional capital to bridge to profitability. Consequently, the Debtor has determined to sell the Business and its assets as quickly as possible to maximize the returns to creditors and, hopefully, investors, using Chapter 11 of the Bankruptcy Code as a vehicle to do so.

8.  A sale of the Business as a going concern pursuant to 11 U.S.C. § 363(b) will also allow the Debtor's Business to continue.

9.  In order to best ensure the success of a sale transaction, the Debtor believes that conducting a sale of its assets, including its licenses and authorizations, tangible personal property, real property lease, business contracts, intangible property, records and other assets (together, the "Assets") through a competitive and binding bid process will enable the Debtor to best position itself for successful emergence from Chapter 11, and will maximize the value of its Assets for the benefit of its creditors. Accordingly, the Debtor files this Motion to establish the procedures for the sale of the Assets pursuant to 11 U.S.C. § 363.

10. Additionally, in accordance with Section 365 of the Bankruptcy Code, the sale may also include the assumption and assignment of designated executory contracts and leases.

## II.    RELIEF REQUESTED

11. Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006, the Debtor respectfully requests that the Court enter an Order (the "Bid Procedures Order"): (A) authorizing the sale of and approving certain bidding procedures for the sale of Assets; (B) scheduling the sale (the "Sale"); (C) approving procedures for the assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures"); and (D) approving the form of the Notice for the Sale (the "Sale Notice").

12. The Debtor believes that the procedures set forth in this Motion are reasonable and will allow for an orderly sale process.

### A. The Proposed Bid Procedures

13. The Debtor has explored various strategic options, including sale and recapitalization alternatives. With the assistance of its advisors and professionals and considering the current market environment, the Debtor has determined that the Sale provides the Debtor with the best opportunity to maximize its ability to reorganize, and provide a distribution to its creditors.

14. The Debtor believes that the best interests of the bankruptcy estate are served by conducting a Sale to identify the highest or otherwise best offer for the sale of its Assets. Accordingly, the Debtor requests that the Court approve the following bid procedures (the "Bid Procedures"), which are also attached as Addendum 1 to the proposed Bid Procedures Order.

15. Set forth below is the general process to be employed by the Debtor with respect to the proposed Sale of its Assets.[1]

   a. **Sale of Assets.** The Debtor is offering the Assets for sale pursuant to the Sale Motion. With respect to any Assets that are not subject to a bid accepted by the Debtor and approved by the Bankruptcy Court at the Sale Hearing (as defined below), the Debtor shall retain all rights and title thereto to the same extent and validity as existed prior to the initiation of the proposed Bid Procedures.

   b. **The Bidding Process and Stalking Horse.** The Debtor shall: (i) determine whether any person is a Potential Bidder (as defined below); (ii) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Assets; (iii) receive offers from Qualified Bidders (as defined below); and (iv) negotiate any offer made to purchase the Assets (collectively, the "Bidding Process"). Neither the Debtor nor its representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person who is not a Potential Bidder. Further, to the extent that a Potential Bidder desires to serve as a stalking horse bidder and the Debtor, in

---

[1] To the extent the description of the Bid Procedures set forth in this Motion differs from those set forth in Addendum 1 to the Bid Procedures Order, the terms of Addendum 1 to the Bid Procedures Order shall control.

consultation with its professionals, determines that selection of a stalking horse bidder will benefit the bidding process, the Debtor shall be permitted to select a Potential Bidder to serve as a stalking horse bidder (the "Stalking Horse Bidder"). To the extent that the Stalking Horse Bidder seeks bid protections, including a break-up fee, expense reimbursement or overbid protection, the Debtor shall be required to seek approval of the Bankruptcy Court prior to entering into an asset purchase or other agreement with the Stalking Horse Bidder.

c. **Participation Requirements.** Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Debtor, in order to participate in the Bidding Process each person (a "Qualified Bidder") must submit a bid that adheres to the following requirements (a "Qualified Bid").

  i. All Qualified Bids must be submitted to J. Scott Victor, SSG Capital Advisors LLC, Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, with a copy to James M. Matour, Dilworth Paxson LLP, 1500 Market Street, Suite 3500E, Philadelphia, Pennsylvania 19102, not later than 5:00 p.m. (prevailing Eastern Time) on January 20, 2015 (the "Bid Deadline").

  ii. All Qualified Bids shall be in the form of an offer letter and asset purchase agreement substantially similar to the draft asset purchase agreement attached hereto as **Exhibit B** from and signed by a person or persons that the Debtor deems financially able to consummate the purchase of the Assets, which letter states:

   1. that such Qualified Bidder offers to purchase the Assets (as identified by the Qualified Bidder) upon the terms and conditions set forth in an executed asset purchase agreement (hard copy and an electronic version in Word format), together with its exhibits and schedules, including terms relating to price, due diligence, contingencies, and time of closing (the "Proposed Agreement");

   2. that such Qualified Bidder is prepared to consummate the transaction within five (5) business days following entry of an Order of the Bankruptcy Court (the "Sale Approval Order") granting the relief requested in the Sale Motion and approving the Sale to the entity submitting the highest and best bid (as determined in accordance with these procedures) (the "Successful Bidder") for the Assets to be purchased pursuant to the Qualified Bid (the "Purchased Assets");

   3. that such Qualified Bidder's offer is irrevocable until two (2) business days after the closing of the Sale of the Purchased Assets;

117751652_2

    4. the actual value of such Qualified Bidder's bid to the Debtor's estate; and

    5. which of the Debtor's unexpired leases and executory contracts are to be assumed in connection with the consummation of the Qualified Bidder's bid.

  iii. Upon receiving notification from the Debtor that a Prospective Bidder otherwise meets the requirements to be considered a Qualified Bidder, any such Prospective Bidder, except any credit bid by RSF, shall be required to provide a cash deposit into escrow with the Debtor of an amount equal to $200,000 (the "Good Faith Deposit") in order to be accepted as a Qualified Bidder.

  iv. All Qualified Bids shall be accompanied by satisfactory evidence, in the opinion of the Debtor and its advisors, of committed financing or other ability to perform all transactions contemplated by the Proposed Agreement.

  v. Qualified Bids cannot contain any financing conditions or contingencies.

d. **Due Diligence.**  The Debtor shall afford each Potential Bidder (as defined below) due diligence access to the Assets.  Due diligence access may include management presentations as may be scheduled by the Debtor, access to data regarding the Assets, on-site inspections and such other matters which a Potential Bidder may request and as to which the Debtor, in its sole discretion, may agree. Neither the Debtor nor any of its representatives are obligated to furnish any information relating to the Assets to any person except to Potential Bidders. Potential Bidders are advised to exercise their own discretion before relying on any information regarding the Assets provided by anyone other than the Debtor or its representatives.  To be a "Potential Bidder," each bidder must have delivered the following:

  i. an executed confidentiality agreement in form and substance satisfactory to the Debtor; and

  ii. current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited and unaudited financial statements or other financial information of the Potential Bidder's equity holder or other financial backer, or such other form of financial disclosure and evidence acceptable to the Debtor demonstrating such Potential Bidder's ability to close the proposed transaction and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Debtor and assigned to the Potential Bidder.

e. **"As Is, Where Is".** The Sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or estate, except to the extent set forth in the Proposed Agreement of the Successful Bidder. Except as otherwise provided in the Proposed Agreement, all of the Debtor's rights, title and interest in and to the Assets to be acquired shall be sold pursuant to the Sale and the Sale Order free and clear of all liens, claims, charges, security interests, restrictions and other encumbrances of any kind or nature thereon and there against (collectively, the "Transferred Liens"). Each bidder shall be deemed to acknowledge and represent that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection with the Assets, the Bidding Process or the Sale, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, in the applicable Proposed Agreement.

f. **Competing Bids.** If the Debtor receives more than one Qualified Bid prior to the Bid Deadline, the Debtor shall conduct an auction (the "Auction") at Dilworth Paxson, LLP, 1500 Market St., Suite 3500E, Philadelphia, PA 19102, on January 22, 2015, beginning at 10:00 a.m. (prevailing Eastern Standard Time) or such later time or other places as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids to provide an opportunity for Qualified Bidders to consider modifications to their Qualified Bids in order to become the successful bidder. Only representatives of the Debtor, the United States Trustee, the Committee, RSF and any Qualified Bidders who have timely submitted Qualified Bids shall be entitled to attend the Auction. The Debtor may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent overbids) for conducting the Auction, so long as such rules are not inconsistent with the Bidding Procedures. Based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtor reasonably determines is relevant, the Debtor, in its sole discretion, may conduct the Auction in the manner it determines will achieve the maximum value for the Assets. At the Auction, the highest and best offer received as a Qualified Bid, as determined by the Debtor, shall be announced and shall be considered the initial bid (the "Initial Bid"). Subsequent bids shall be made by Qualified Bidders in minimum increments of $25,000 above the Initial Bid.

As soon as practicable after the conclusion of the Auction, the Debtor shall: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale; and (ii) identify the highest or otherwise best offer for the Assets and any second-highest offer (the "Successful Bid"). The

      Debtor will present the Successful Bid to the Bankruptcy Court for approval at the Final Sale Hearing.  The Debtor reserves all rights to not submit any bid which is not acceptable to the Debtor.

g. **Credit Bids.**  RSF shall have the right to credit bid on the Assets securing its claim pursuant to the Bankruptcy Code, including Section 363(k) thereof.

h. **Acceptance of Qualified Bids.**  The Debtor shall sell the Assets to the Successful Bidder, submitting the highest or otherwise best Qualified Bid at the Auction, after approval of such Qualified Bid by the Bankruptcy Court at the Final Sale Hearing.  The Debtor's presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute the Debtor's acceptance of such Qualified Bid.  The Debtor shall have accepted a Qualified Bid only when that Qualified Bid has been approved by the Bankruptcy Court at a Final Sale Hearing.

i. **The Final Sale Hearing.**  After the conclusion of the Auction, or selection of the highest and best offer if no Auction is held, the Bankruptcy Court shall conduct a hearing (the "Final Sale Hearing").  At the Final Sale Hearing, the Debtor will seek entry of an order (the "Sale Order"), among other things: (i) authorizing and approving the Sale to the Successful Bidder, as determined by the Debtor in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the Proposed Agreement submitted by the Successful Bidder; (ii) finding that the Successful Bidder is a good faith purchaser pursuant to § 363(m) of the Bankruptcy Code; and (iii) as appropriate, exempting the Sale and conveyance of the Assets from any transfer tax, stamp tax or similar tax.  The Final Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date in open court.

      Following the entry of the Sale Order approving the Sale, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the next highest or otherwise best Qualified Bid, as disclosed at the Final Sale Hearing, shall be deemed to be the Successful Bid and the Debtor shall be authorized to effectuate such sale without further order of the Bankruptcy Court.

j. **Return of Good Faith Deposit.**  The Good Faith Deposits of all Qualified Bidders shall be retained by the Debtor and all Qualified Bids will remain open and irrevocable, notwithstanding Bankruptcy Court approval of a Sale pursuant to the terms of a Successful Bid by a Qualified Bidder, until two (2) business days after the closing of the Sale of the Assets.  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, which shall be retained by the Debtor as liquidated damages.

8

k. **Modifications.** The Debtor may: (i) determine, in its business judgment, which Qualified Bid, if any, is the highest or otherwise best offer; (ii) consult with the representatives of any Committee, secured creditor, or other significant constituents in connection with the bidding process and Bid Procedures; and (iii) reject, at any time before entry of the Sale Order approving a Qualified Bid, any bid that, in the Debtor's sole reasonable discretion, is: (x) inadequate or insufficient; (y) not in conformity with the requirements of the Bankruptcy Code; or (z) contrary to the best interests of the Debtor, its estate, its creditors and other parties-in-interest. At or before the Final Sale Hearing, the Bankruptcy Court, or, consistent with the purposes of the Bid Procedures to obtain the highest or otherwise best offer for the Assets, the Debtor may impose such other terms and conditions as it may determine to be in the best interests of the Debtor's estate, its creditors and other parties-in-interest.

l. **Reservation of Rights.** In addition to the rights set forth above, the Debtor may modify these Bid Procedures or impose, at or prior to the Sale, additional terms and conditions on the proposed Sale of the Assets if, in its reasonable judgment, such modifications would be in the best interests of the Debtor's estate and promote an open and fair sale process.

B. **The Proposed Assumption and Assignment Procedures**

16. To facilitate and effectuate the Sale of the Debtor's Assets to the Successful Bidder(s), the Debtor seeks authorization to assume and assign certain executory contracts and unexpired leases in connection with the Sale. In order to provide counterparties to those contracts and leases with adequate notice of such assumption and proposed cure amounts (the "Cure Amounts"), the Debtor proposes the following procedures (the "Assumption and Assignment Procedures"), which are also attached as Addendum 2 to the proposed Bid Procedures Order.[2]

   a. Within five (5) days following entry of an order approving these Bid Procedures, the Debtor shall file a schedule of cure obligations (the "Contract and Cure Schedule") listing all unexpired leases and executory contracts that pertain to the Assets (the "Assigned Contracts") and the amount, if any, that the Debtor

---

[2] To the extent the description of the Assumption and Assignment Procedures set forth in this Motion differs from those set forth in Addendum 2 to the Bid Procedures Order, the terms of Addendum 2 to the Bid Procedures Order shall control.

9

117751652_2

  contends is the amount needed to pay to cure any defaults which respect to such Assigned Contracts (the "Cure Amounts").

b. Upon filing, a copy of the Contract and Cure Schedule and these Assumption and Assignment Procedures will be served on each of the counterparties to the Assigned Contracts listed on the Contract and Cure Schedule.

c. The Debtor shall amend the Contract and Cure Schedule promptly after the completion of the Sale to update the information contained therein with respect to the Successful Bid(s), and shall serve an amended Contract and Cure Schedule on each of the counterparties to the Assigned Contracts listed thereon.

d. Any objections ("Assignment Objections") to the assumption and assignment of any Assigned Contract, including but not limited to objections relating to adequate assurance of future performance or to the cure amount set forth in the Contract and Cure Schedule, except as such schedule may be amended after completion of the Auction, must be filed with the Bankruptcy Court and served upon the Notice Parties on or before 4:00 p.m. prevailing Eastern Time on the December 29, 2014 (the "Assignment Objection Deadline").

e. Any counterparty failing to file an Assignment Objection by the Assignment Objection Deadline shall be forever barred from: (i) objecting to the Cure Amount set forth on the Contract and Cure Schedule with respect to its Assigned Contract; (ii) seeking additional amounts arising under its Assigned Contract prior to the Closing from the Debtor or the Successful Bidder; and (iii) objecting to the assumption and assignment of its Assigned Contract to the Successful Bidder.

f. Any Assignment Objection not consensually resolved prior to the Final Sale Hearing shall be heard at the Final Sale Hearing with any related Cure Amount or adequate assurance of future performance being fixed by the Bankruptcy Court. All other objections to the proposed assumption and assignment of the Assigned Contracts will be heard at the Final Sale Hearing.

g. Except as may otherwise be agreed to by all parties to an Assigned Contract, on or before the Closing, the cure of any defaults under Assigned Contracts necessary to permit assumption and assignment thereof shall be by: (i) payment of the undisputed Cure Amount; and/or (ii) establishment of a reserve with respect to any disputed Cure Amount. The party responsible for paying the Cure Amount shall be as set forth in the Proposed Agreement between the Successful Bidder and the Seller.

12. The Debtor believes that the proposed Assumption and Assignment Procedures will provide the counterparties to the Assigned Contracts a full and fair opportunity to be heard

with respect to issues concerning Cure Amounts and the proposed assumption and assignment of the Assigned Contracts.

    **C.**    **Legal Argument**

        **1.**    **The Proposed Sale Should Be Authorized.**

13.    In relevant part, Section 363(b) provides that a debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

14.    In determining whether to approve a sale outside of the ordinary course of business, courts consider the following (i) whether a sound business purpose exists for the sale; (ii) whether adequate and reasonable notice of the sale has been given; (iii) whether the sale is proposed in good faith; and (iv) whether the proposed purchase price is fair, reasonable and adequate. See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983).

15.    The Debtor submits that the proposed sale of Assets is reasonable, appropriate and designed to ensure fairness and surety to the process.

16.    Pursuant to the proposed Bid Procedures, the Debtor will widely market the Assets and provide sufficient notice of the Bid Procedures and sale process to all interested parties in an effort to ensure an arm's length sale to the highest and best bidder. The proposed Sale is subject to competing bids, thus enhancing the Debtor's ability to receive the highest and best value for the Assets that are ultimately sold. The Bid Procedures will also provide sufficient market testing and are the best means to ensure that the sale price for the Assets is fair and reasonable.

117751652_2

17. The Debtor anticipates that the requirements of Section 363(f) will be satisfied for the proposed Sale. Any interests in the Assets are retained to the same extent and validity as they currently exist as set forth in the Bid Procedures or will be resolved by agreement of the parties as part of the Sale. Any liens on the Assets will attach, in the same amount and priority as they currently exist, to the proceeds of the Sale, subject to any claims or defenses that the Debtor may have in response thereto.

18. Accordingly, the Debtor believes that the Court should authorize the proposed Sale of Assets.

### 2. The Bid Procedures Are Appropriate and Should Be Approved.

19. Courts have recognized that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the bankruptcy estate. See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc., 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard under which such procedures and arrangements are "presumptively valid").

20. The Debtor's proposed Bid Procedures are reasonable, appropriate, and within the Debtor's sound business judgment under the circumstances, as they will maximize the value that the Debtor will recover on account of the Sale.

21. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, e.g., Four B. Corp. v. Food Barn Stores, Inc., 107 F.3d 558 564-65 (8th Cir. 1997) (recognizing that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate"); Integrated Resources, 147 B.R. at 659 ("It is a

well-established principle of bankruptcy law that the . . . debtor's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quotations omitted).

22. Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. See, e.g., Integrated Resources, 147 B.R. at 659 (finding that such procedures "encourage bidding and maximize the value of the debtor's assets"); In re Financial News Network, Inc., 126 B.R. 152, 156 (S.D.N.Y. 1991) ("[C]ourt-imposed rules for the disposition of assets [should] provide an adequate basis for comparison of offers . . . .").

23. The Debtor believes that the Bid Procedures establish the parameters under which the value of the Assets may be established and maximized at the Sale, and/or Auction, and the Final Sale Hearing. The proposed Bid Procedures will allow for fair and competitive bidding, thereby increasing the likelihood that the Debtor will receive the greatest possible consideration for such Assets and a successful closing of the Sale.

### 3. The Overbid Requirements Are Appropriate.

24. One important component of the Bid Procedures is the "overbid" provision, which requires any initial offer for the Purchased Assets to be in an amount of at least $25,000 more than the Initial Bid (the "Overbid").

25. A minimum initial overbid is necessary to ensure that there is an increase in the net proceeds received by the estate over the expenses being incurred to complete the Sale through an Auction and compare competing bids. Case law supports minimum overbids that are up to 10% of the initial purchase price as fair and reasonable. See In re Wintex, Inc., 158 B.R.

540, 543 (D. Mass. 1992) ("A debtor may avoid the increased costs and complexity associated with considering additional bids unless the additional bids are high enough to justify their pursuit. The 10% increase requirement is one example of a reasonable litmus test."); see also In re Colony Hill Associates, 111 F.3d 269 (2d Cir. 1997) (approving requirement that minimum overbids exceed purchaser's initial offer by at least $650,000, which was 8.6%); Financial News, 126 B.R. at 154 (approving minimum overbid requirement of at least $10 million over the purchasers offer of $105 million). Here, the proposed overbid is anticipated to be well below 10% of the Initial Bid and is necessary to take into account the expenses that will be incurred to consider additional and competing bids received at the Auction.

### 4. The Sale, Hearing and Notice Procedures Are Appropriate.

26. Pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(2), the Debtor is required to provide creditors with twenty-one days' notice of the Sale, though the Court may reduce this period pursuant to Federal Rule of Bankruptcy Procedure 9006(c). Pursuant to Federal Rule of Bankruptcy Procedure 2002(c), the Debtor is required to notify creditors of the proposed Sale of the Assets, including the time and place of the Final Sale Hearing, the terms and conditions of the Sale, and the deadline for filing any objections.

27. The Debtor proposes that within two days following entry of the Bid Procedures Order, the Debtor will serve by first class mail a Notice of Sale of Assets in the form of Addendum 3 to the Bid Procedures Order (the "Sale Notice") and the Bid Procedures Order to: (a) counsel to any Committee appointed in the Debtor's bankruptcy case; (b) the Office of the United States Trustee; (c) counsel to the Debtor's secured creditors; (d) those parties that request notice of all pleadings pursuant to Federal Rule of Bankruptcy Procedure 2002; (e) any known prospective bidders; and (f) all parties to executory contracts. In addition, within two days

following entry of the Bid Procedures Order, the Debtor will serve the Sale Notice by first class mail on all known creditors of the Debtor.

**WHEREFORE,** the Debtor respectfully requests that this Court enter the Bid Procedures Order substantially in the form attached hereto as **Exhibit A** and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: November 24, 2014
Philadelphia, Pennsylvania

/s/ Anne M. Aaronson
**DILWORTH PAXSON LLP**
James M. Matour
Anne M. Aaronson
Jennifer L. Maleski
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200

*Proposed Counsel for Debtor Advanced Workstations in Education, Inc.*